**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**MARKILA JOHNSON**
*on behalf of*
M.A.J.,

                         **Plaintiff,**

    vs.                                      5:15-cv-00476
                                                         (MAD)

**CAROLYN W. COLVIN,** *Acting
Commissioner of Social Security,*

                         **Defendant.**
_____

**APPEARANCES:**                         **OF COUNSEL:**

**OLINSKY LAW GROUP**           **HOWARD D. OLINSKY, ESQ.**
300 South State Street, Suite 420
Syracuse, New York 13202
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**   **DANIEL R. JANES, SPECIAL AUSA**
Office of Regional General Counsel
Region II
26 Federal Plaza, Room 3904
New York, New York 10278
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Markila Johnson ("Plaintiff") brought this action on behalf of her son, M.A.J.[1]

("Claimant"), pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking a review of the

---

[1]Throughout this decision, the child on whose behalf this action was brought by Plaintiff will be referred to by his initials or as "Claimant."

Commissioner of Social Security's ("Commissioner") decision to deny Plaintiff's application for Childhood Supplemental Security Income. Dkt. No. 1.

## II. BACKGROUND

Claimant's date of birth is September 21, 2007, which made him three years old on March 24, 2011, the alleged onset of his disability. *See* Dkt. No. 9, Administrative Transcript ("T."), at 113. On June 23, 2011, the Committee on Preschool Education recommended that Claimant be classified as a student with a disability and that he receive special education services through an Individualized Education Plan ("IEP"). *See id.* at 163. This recommendation was based upon reports from an occupational therapy evaluation, psychological evaluation, and speech/language evaluation. *See id.* at 165. Claimant's IEP included twice weekly special education services and occupational therapy as well as curb-to-curb transportation accommodation. *See id.* at 169, 171.

On February 28, 2013, Claimant was diagnosed with ADHD by Chima Chionuma, M.D., Claimant's treating pediatrician, and was prescribed Vyvanse and Clonidine. *See id.* at 278. At the disability hearing on March 27, 2013, Plaintiff reported that Claimant began taking Clonidine and Vyvanse for his ADHD on March 3, 2013. *See id.* at 30, 32. Plaintiff testified that Claimant was disabled because the ADHD condition was keeping him from learning in school. *See id.* at 29. Plaintiff testified that Claimant frequently forgets what he was asked to do, or he disregards what he is told to do. *See id.* at 35. Plaintiff's greatest concern is centered on Claimant's ADHD. *See id.* at 36. At the time of the hearing, Claimant was attending full-day Kindergarten, and he liked his teachers a lot. *See id.* at 30, 36. Although he spent some time at in-school suspension, it was apparent that this occurred mostly before Claimant started his treatment for ADHD. *See id.* at 36-37.

Plaintiff described Claimant as very hyperactive before he was on medication, but, even in the few weeks he had been on the medication, she found him to be calm. *See id.* at 32. Plaintiff testified that Claimant was able to do his homework, watch television, and read since starting his medication. *See id.* at 32. At five years old, Claimant was not a participant in structured sports, but Plaintiff testified that they go to the park, the beach, the fair and other outside locations. *See id.* at 33-34, 39. Claimant enjoys playing games on his Mom's phone, and he is able to go out to eat and to have cookouts with his Mom. *See id.* at 34, 39. He also enjoys board games, coloring, and drawing. *See id.* at 34-35. Plaintiff described that Claimant is loving towards his family. *See id.* at 36.

At the conclusion of the hearing, the ALJ asked Plaintiff to complete authorizations so that medical evidence could be obtained from Claimant's providers. *See id.* at 39-40. The ALJ also sent out a teacher questionnaire to Claimant's school. *See id.* In June 2013, Claimant's school teacher completed a teacher questionnaire form from the Social Security Administration, which indicated that Claimant does well in class when his medication is consistently administered, and he is able to learn. *See id.* at 201-18. This teacher noted that the medication was not started until March and, as a result, Claimant missed out on a lot of learning throughout the year. *See id.* at 210. The teacher expressed that Claimant was six months behind his peers academically, and she recommended that Claimant attend summer school. *See id.* at 216.

On July 11, 2011, Plaintiff filed an application for Childhood Supplemental Security Income on behalf of Claimant, alleging that Claimant was disabled due to a learning disability. *See id.* at 113-19. The application for Childhood Supplemental Security Income was initially denied on August 17, 2011 by the state agency under the Social Security Act. *See id.* at 46. Plaintiff then requested a hearing by an administrative law judge on August 26, 2011. *See id.* at

54-56. On March 27, 2013, Plaintiff and Claimant appeared for a disability hearing, which was held via video-teleconference, before Administrative Law Judge Andrew Henningfeld (the "ALJ"). *See id.* at 22-41. The ALJ issued an unfavorable decision on Plaintiff's application, dated September 9, 2013. *See id.* at 11-17. The ALJ made the following determinations: (1) Claimant is a preschooler; (2) Claimant has not engaged in any substantial gainful activity; (3) Claimant's severe impairments include attention deficit hyperactivity disorder ("ADHD"), developmental delays, and asthma; and (4) Claimant does not have an impairment or combination of impairments that meets, medically equals, or functionally equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* at 11-16. Therefore, the ALJ concluded that Claimant is not under a disability, as defined in the Social Security Act. *See id.* at 17.

Plaintiff timely filed a request for a review of the ALJ's decision with the Appeals Council, *see id.* at 6-7, and, by notice dated February 20, 2015, the request for appeal was denied rendering the ALJ's decision the Commissioner's final decision, *see id.* at 1-5. Plaintiff then commenced this action for judicial review of the denial of the disability claim by the filing of a complaint on April 20, 2015. *See* Dkt. No. 1. Both parties have moved for judgment on the pleadings. *See* Dkt. Nos. 11, 12. The Court orders that the Commissioner's decision is affirmed.

### III. DISCUSSION

*A.  Standard of Review*

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine de novo whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 447 (2d Cir. 2012); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). The Court must examine the administrative transcript as a whole to determine whether the decision is supported by substantial evidence and whether the correct legal standards

were applied. *See Brault*, 683 F.3d at 447; *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009); *Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998). "A court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if it appears to be supported by substantial evidence." *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir. 1987)). The Second Circuit has explained that upholding a determination based on the substantial evidence standard where the legal principals may have been misapplied "creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986. However, if the record is such that the application of the correct legal principles "could lead to only one conclusion, there is no need to require agency reconsideration." *Id.*

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). If supported by substantial evidence, the Commissioner's factual determinations are conclusive, and the court is not permitted to substitute its analysis of the evidence. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982) ("[The court] would be derelict in [its] duties if we simply paid lip service to this rule, while shaping [the court's] holding to conform to our own interpretation of the evidence"). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984). This very deferential standard of review means that "once an ALJ finds facts, [the Court]

can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" *Brault*, 683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)).

## B.   Standard for Evaluating Disability Claims for Children

"A child is disabled for the purposes of SSI if they have 'a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *See Stackhouse X.S. v. Astrue*, No. 12-cv-6550P, 2014 WL 4354145, *11 (W.D.N.Y. Aug. 27, 2014) (quoting 42 U.S.C. § 1382c(a)(3)(C)(i)). Individuals under the age of eighteen who engage in "substantial gainful activity" are excluded from coverage. *See* 42 U.S.C. §§ 1382c(a)(3)(C)(ii).

In determining whether a child is disabled for purposes of SSI, the ALJ performs the following three-step analysis:

> First, the ALJ considers whether the child is engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). Second, the ALJ considers whether the child has a "medically determinable impairment that is severe," which is defined as an impairment that causes "more than minimal functional limitations." *Id.* § 416.924(c). Finally, if the ALJ finds a severe impairment, he or she must then consider whether the impairment "medically equals" or, as is most pertinent here, "functionally equals" a disability listed in the regulatory "Listing of Impairments." *Id.* § 416.924(c)–(d).

*F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, *4 (N.D.N.Y. Feb. 15, 2012); *See also Miller v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 384, 386 (2d Cir. 2010). "An ALJ determines functional equivalence by evaluating a claimant child's functioning in six broad domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being." *Van Valkenberg v. Astrue*, No. 1:08-CV-0959, 2010 WL 2400455, *5 (N.D.N.Y.

May 27, 2010) (citing 20 C.F.R. §§ 416.926a(b)(1)(i)-(vi). A finding of "extreme" limitation in one domain or of "marked" limitation in any of the two listed domains satisfies the requirements of functional equivalence. *Miller,* 409 Fed. Appx. at 386.

With respect to the three-step analysis, the ALJ concluded that Claimant (1) has not engaged in substantial gainful activity, (2) has severe impairments from his ADHD, developmental delays, and asthma, (3) does not have an impairment or combination of impairments that meets, medically equals, or functionally equals one of the disabilities listed in the regulatory "Listing of Impairments." *See* T. at 16. Furthermore, the ALJ concluded that Claimant had less than marked limitations in all six domains of functioning. *Id.*

**C.  Analysis**

Plaintiff makes the following arguments: (1) the ALJ failed to fully and fairly develop the record and the final agency decision is not supported by substantial evidence, *see* Dkt. No. 11 at 9-13; (2) the ALJ erred as a matter of law in failing to provide any assessment of the credibility of Plaintiff's reports regarding Claimant's functioning, *see id.* at 14-15; and (3) the ALJ erred as a matter of law in failing to include any assessment of whether Claimant met or equaled any applicable listed impairment, *see id.* at 15-16. Defendant asserts that the Commissioner's decision is supported by substantial evidence and that the Commissioner's decision should be affirmed. *See* Dkt. No. 12 at 3.

### *1. The Development of the Record*

Plaintiff asserts that the ALJ erred by failing to fully and fairly develop the record. *See* Dkt. No. 11 at 9-10. According to Plaintiff, the final agency decision is not supported by substantial evidence because the administrative transcript is insufficient to support the ALJ's conclusions regarding Claimant's functional abilities. *See* Dkt. No. 11 at 7-8. Defendant asserts

that substantial evidence supports the ALJ's decision and that Plaintiff has not identified any clear gaps in the record preventing the ALJ from making a decision based on a complete medical history. Dkt. No. 12 at 8.

"By statute, an ALJ is bound to develop a claimant's complete medical history for at least twelve months prior to the filing of an application for benefits." *Bushey v. Colvin*, No. 8:13–CV–0777, 2014 WL 4854984, * 4 (N.D.N.Y. Sept. 30, 2014) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir.1998) (citing 42 U.S.C. § 423(d)(5)(B) as incorporated by 42 U.S.C. § 1382c(a)(3)(G) and 20 C.F.R. § 416.912(d))). "[W]hen the claimant is unrepresented, the ALJ is under a heightened duty 'to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" *Ericksson v. Comm'r of Soc. Sec.*, 557 F.3d 79, 83 (2d Cir. 2009) (quoting *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)); *see also Lopez v. Sec'y of Health & Human Servs.*, 728 F.2d 148, 149-50 (2d Cir. 1984). "'When the ALJ fails to develop the record fully, he does not fulfill this duty and the claimant is deprived of a fair hearing.'" *Sawma v. Perales*, 895 F.2d 91, 96 (2d Cir. 1990) (quoting *Lopez*, 728 F.2d at 149).

Plaintiff asserts that "there is no evidence that the ALJ attempted to request, seek, or obtain updated treatment records regarding Claimant's functioning on medication or an assessment from [Claimant's teacher] regarding Claimant's functioning on medication." Dkt. No. 11 at 9. This assertion is incorrect. Following the hearing, the ALJ sent two teacher questionnaires to Claimant's teacher, Ms. Cruz, in order to gain a more detailed analysis of Claimant's functioning on medication. *See* T. at 201-218. While Ms. Cruz focused on Claimant's performance without medication, she indicated that Claimant's functioning changed after taking medication, *see id.* at 207, Claimant is "starting to learn" since taking the medication, *see id.* at

210, and Claimant "does well" when he takes his medication consistently, *see id.* at 216. Further, the ALJ successfullyy updated medical records from Syracuse Community Health Center prior to issuing his decision. *See id.* at 40, 276-98. By submitting additional questionnaires to Claimant's teacher as well as requesting updated medical records from Syracuse Community Health Center, the ALJ conscientiously inquired of all the relevant facts regarding Claimant's functioning on medication.

>Plaintiff also asserts:
>
>>The ALJ may not assume that "does well" translates into less than marked limitations, particularly where there is no other evidence in the record related to treatment or observations during the time after Claimant began taking medication. Plaintiff's testimony shows that Vyvanse was not a cure-all for Claimant's conditions, as problems with behavior continued to exist even with the medication.

Dkt. No 11 at 9. This assertion is not supported by case law or facts within the transcript.

First, "Claimants bear the general burden of proving that they are disabled for purposes of receiving SSI benefits." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012) (citing *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)). Claimants are better positioned to offer proof of their medical condition because, ordinarily, facts relevant to their disability determination would be in their possession. *Id*. at 124. "Fairness and practicality therefore counsel in favor of placing this burden on them." *Id*.; *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so."). Consequently, Plaintiff bore the burden of demonstrating the ineffectiveness of the medication.

Furthermore, while Plaintiff testified that Claimant has displayed hyperactive behavior since being on medication, she also testified that the medication is "helping out a lot as far as him with his work and focusing and not being so hyper in class." T. 32, 36. Additionally, Plaintiff

9

testified that before Claimant was on medication, he was very hyperactive and destructive to the house, but, since taking medication, Claimant is calm and will sit down to do his homework, watch TV, and read. *See id.* "When an impairment can be controlled by medication, a claimant is not disabled unless he has a justifiable reason for refusing to take the medication." *Raza ex rel. Z.R. v. Colvin*, No. 13 Civ. 1963, 2014 WL 3767045, * 14 (S.D.N.Y. July 22, 2014) (citing *Rushing v. Massanari*, 159 F. Supp. 2d 1315, 1319 (D. Kan. 2001)); *see also* 20 C.F.R. § 416.930. Testimony from Plaintiff as well as the questionnaires of Claimant's teacher support the ALJ's conclusion that Claimant's ADHD can be controlled by medication, and Plaintiff offers no reason for refusing to take the medication. Therefore, the ALJ's determination that Claimant was not disabled is supported by substantial evidence. For the reasons detailed above, the ALJ met his duty in fully developing the record.

### *2. Plaintiff's Credibility Regarding Claimant's Functioning*

The Plaintiff asserts that the ALJ did not accept Plaintiff's statements regarding hyperactivity and behavioral problems, and the ALJ's failure to explain his reasons for rejecting parts of Plaintiff's testimony prevents review of the ALJ's decision. Dkt. No. 11 at 12-13. Defendant asserts that because the ALJ's credibility determination is supported by substantial evidence, the Court must uphold the Commissioner's decision to discount alleged subjective symptomatology. Dkt. No. 12 at 9.

"As a fact finder, the ALJ is free to accept or reject testimony of a claimant's parent." *Lane ex rel S.A.H. v. Comm'r of Soc. Sec.*, No. 3:12-CV-1407, 2014 WL 4885344, *6 (N.D.N.Y. Sept. 30, 2014) (citing *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988)). "A finding that a witness is not credible must be set forth with sufficient specificity to permit intelligible review of the record." *Williams ex rel. Williams*, 859 F.2d at 260 (citing *Carroll v.*

*Sec'y of Health & Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983). "Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review." *Crysler v. Astrue*, 563 F. Supp. 2d 418, 440 (N.D.N.Y. 2008) (citing *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)).

Plaintiff uses *Crysler* to support their argument. *See* Dkt. No. 11 at 13. However, the facts of this case are distinguishable from *Crysler*. *See id.* In *Crysler*, the statements in the ALJ's decision contradicted the plaintiff's medical records and her daily activity questionnaire, and the ALJ inappropriately relied on a hearing reporter's observations of the plaintiff when making his decision. *See Crysler*, 563 F. Supp. 2d at 442-43. In this case, while Plaintiff testified that she has received complaints from Claimant's teachers regarding Claimant's behavior since he began taking medication, she also testified Claimant's behavior at home and in school has improved. *See id.* at 32, 36. Claimant's teacher also reported that Claimant "does well" on medication and that Claimant has started to learn since taking the medication. *See id.* at 210, 216. The ALJ used these statements to support his determination that the medication has been effective in treating Claimant's ADHD, which ultimately led to his conclusion that Claimant has less than marked limitations in all six functioning domains when he is on medication. *See id.* at 14-16. This distinction is significant because in *Crysler*, the ALJ rejected the plaintiff's version of the facts and inappropriately substituted them with his own interpretation of the facts. In this case, the ALJ used the testimony of the Plaintiff to reach his conclusion regarding the effectiveness of Claimant's ADHD medication. Plaintiff's testimony was not disregarded by the ALJ as not credible.

As this Court stated earlier, "[w]hen an impairment can be controlled by medication, a claimant is not disabled unless he has a justifiable reason for refusing to take the medication."

*Raza ex rel. Z.R.*, 2014 WL 3767045, at *14 (citations omitted). Since the evidence from Plaintiff and Claimant's teacher support that Claimant's medications were effective, the ALJ's conclusion that Claimant had less than marked limitations in all six functioning domains while on medication was supported by substantial evidence.

### *3. The ALJ's Assessment of Claimant's Impairments*

Plaintiff asserts that this matter should be remanded for further administrative proceedings because the ALJ's failure to include any discussion of whether Claimant did not meet or equal a Listing prevents this court from being able to properly review whether the ALJ's determination was supported by substantial evidence. *See* Dkt. No. 11 at 13-14. Defendant asserts that Plaintiff failed to meet her burden in showing that Claimant met or equaled Listing § 112.11 and, thus, the ALJ's findings are supported by substantial evidence. *See* Dkt. No. 12 at 11.

In order for a child to meet Listing § 112.11 (ADHD) of 20 C.F.R. Pt. 404, Subpt. P, App. 1, ("Section 112.11") they must show: "(1) medically documented findings of marked inattention, marked impulsiveness, and marked hyperactivity, (2) resulting in a marked impairment in at least two of the following: cognitive/communicative function, social functioning, personal functioning, or maintaining concentration, persistence and pace." *Mace ex rel. A.M. v. Colvin*, No. 12-1357, 2015 WL 729796, *8 (N.D.N.Y. Feb. 19, 2015) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 112.11); *See also VanOrden ex rel. Brown v. Comm'r of Soc. Sec.*, 430 F. Supp. 2d 102, 104 (W.D.N.Y. 2005).

In his decision, the ALJ discussed in great detail the medically documented findings of Claimant's pediatrician, physical therapist, occupational therapist, speech therapist, and school psychologist. *See* T. at 12-15. He used these findings to support his conclusion that Claimant has less than marked limitations in all six functioning domains. *Id.* Accordingly, the ALJ considered

and discussed the evidence in the record that supports his determination that Claimant does not have marked impairments in any of the areas set forth in § 112.11.

Plaintiff does not point to any medically documented findings that indicate marked inattention, marked impulsiveness, and marked hyperactivity. Plaintiff contends that Claimant's impairment reached the level of Listing § 112.11 with the opinions of Claimant's teacher. *See* Dkt. No. 11 at 14. However, as discussed, those opinions were specifically related to Claimant's impairment without medication. Moreover, while teachers are "valuable sources of evidence for assessing impairment severity and functioning," "a teacher is not an acceptable medical source, and not an expert in Social Security law." *See Smith ex rel. v. Astrue*, No. 10-CV-00053, 2011 WL 1113779, *5 (N.D.N.Y. Jan. 20, 2011). Since Plaintiff has failed to establish medically documented findings of marked inattention, marked impulsiveness, and marked hyperactivity, she has not met her burden in showing that Claimant's impairment met or equaled Listing § 112.11.

## IV. CONCLUSION

After carefully reviewing the record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Commissioner's decision denying disability benefits is **AFFIRMED**; and the Court further

**ORDERS** that the Clerk shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 27, 2016
       Albany, New York

Mae A. D'Agostino
U.S. District Judge